## THE PONTIN BROTHERS.

## In re PONTIN LIGHTERAGE & TRANSPORTATION CORPORATION.

District Court, E. D. New York.
March 15, 1930.

E. C. Sherwood, of New York City (William L. O'Brion, of New York City, of counsel), for petitioner.

Edward J. McCrossin, of New York City, proctor (William F. Purdy, of New York City, of counsel), for claimant.

CAMPBELL, District Judge.

The question of the right to limit liability was first tried, and, at the conclusion of the trial, the claimant Mathisen moved to dismiss, on the ground that the petitioner had failed to show due diligence to make the boat seaworthy, and had failed to show that the boat was in fact seaworthy.

The steam lighter Pontin Brothers and her engines were, on July 17, 1928, in good condition, she was properly equipped, carried a sufficient crew, her officers were competent men, and no question is raised as to, the competency of the crew, with the exception of the claimant Mathisen, who was a deck hand.

Mathisen was on the morning in question employed by the master of the lighter, who was authorized by the owner to employ deck hands, as masters are frequently authorized in this harbor.

The master of the lighter was a competent man who had held a master's license since 1904, and had been master of the Pontin Brothers for from three to four years before the date of the accident.

The master was not an officer or stockholder of the petitioner, and no officer of the petitioner was on board at the time of the accident.

Where the owner in good faith appoints a competent agent to equip, man, or maintain a vessel or her machinery, any acts of omission or commission of the agent, not participated in personally by the owner, do not constitute "privity or knowledge" within the meaning of the limitation of this statute (46 USCA § 183). Petition of Canadian Pacific Ry. Co. (D. C.) 278 F. 180.

It is true that the master did not make inquiry as to Mathisen's qualifications, but accepted him on the recommendation of the regular deck hand, whose place Mathisen was filling.

The position of deck hand is the lowest position on the boat and one in which all of

those who serve in the deck department must start, unless they come from the cook's galley in an emergency, and if in the employment of deck hands you were limited to experienced men, no men could learn the business.

This is not a case of injury to some one else by reason of the lack of experience or knowledge of Mathisen, but of injury to himself.

Mathisen acted as stern deck hand when at least three landings were made before the landing in question, and properly performed his duty, showing his competency for the position.

The owner showed that it had used due diligence to make the boat seaworthy, and that the boat was in fact seaworthy, and the injury or damage to the claimant was done, occasioned, or incurred without the privity or knowledge of the petitioner or its managing officers.

I therefore denied the motion to dismiss and proceeded to take the proof of the claim of the claimant Mathisen.

On the morning of July 17, 1928, the claimant Mathisen, who had worked abroad on tramp boats for three years, entered upon his duties as the stern deck hand of the steam lighter Pontin Brothers, which was 99.8 feet in length, and 30.8 feet beam, 10.5 feet depth, gross tonnage 215, net tonnage 121, and had a forward deck and a big after deck.

The market value of the Pontin Brothers was $20,000, and her earned freight $96.

The Pontin Brothers was lying at Staten Island when Mathisen joined her, and from there she proceeded to Pier 11, Manhattan, East River, where she made fast to the pier and the deck hands unloaded some freight.

The Pontin Brothers then proceeded to Pier 44, Brooklyn, where she landed and discharged some freight, and then to Pier 46, Brooklyn, where she landed and discharged some freight.

From that point the Pontin Brothers proceeded to Pier 9, Manhattan, North River, and discharged freight, and then proceeded down the bay and the Kills to Elizabethport.

The Pontin Brothers attempted to make a landing at the copper docks at Bayway, N. J., on the Kill, and the claimant was injured at about 2:30 o'clock p. m., daylight saving time, which would be about 1:30 o'clock p. m., eastern standard time, on July 17, 1928.

The tide was ebb and at its strength having between two and three hours to run be-fore low water, as the difference in time of the tide was about an hour and thirty minutes later at Bayway than at Governors Island, and it was high water at Governors Island at 8:16 a. m., eastern standard time, 9:16 a. m., daylight saving time, and at Bayway 10:46 a. m., daylight saving time, and low water at Governors Island at 3:21 p. m., daylight saving time, and at Bayway at 4:51 p. m., daylight saving time.

The Pontin Brothers came down the Kills through the B. & O. bridge, and, when she came in between that bridge and the new bridge, her engines were stopped and she continued on with the tide.

When she arrived in front of the copper docks at Bayway, her master put her head out a little way and gave a backing signal to the engine room.

The stern of the boat was about sixty feet off from the dock when she started to back. She went astern for about thirty seconds or so, and when the stern of the Pontin Brothers was about three or four feet from the dock, and the bow about twenty-five to thirty feet from the dock, her engines were stopped.

There is a conflict in the testimony as to what followed, but I am convinced that the master of the Pontin Brothers told the stern deck hand, the claimant Mathisen, who was on the stern of the Pontin Brothers to throw the stern line to the man on the dock, and that Mathisen obeyed that order by throwing the line to the man on the dock, who caught it and put the eye of it on the bitt.

The master did not want the line on that bitt, as he desired to bring the stern in alongside of the dock which faced the Kills at the place where the cargo which he intended to load on the stern of the Pontin Brothers was located, and he told the man on the dock to take the line off that bitt and throw it back to Mathisen, because he wanted it further down.

The man on the dock threw the line back to Mathisen.

Thereafter the master of the Pontin Brothers again told Mathisen to throw the line to the man on the dock, which he did, and the man on the dock put the eye on another bitt further down.

Mathisen then had one turn of the line on the cleat and was going to make it fast.

He was holding the line when the master, without warning to him, signaled the engine room to back, and the boat backed quickly, and Mathisen was compelled to let go the

line, as it passed through his hands so quickly that it burned his hands, and the slack of the line twisted around his left leg at the ankle, and so injured the leg that it was amputated between the knee and ankle.

The master of the steam lighter Pontin Brothers was guilty of negligence in making a stern landing on the ebb tide, which is sometimes called a flying landing, instead of rounding to and making his landing by heading up against the tide.

While the stern landing may sometimes be made without trouble, when the deck hand has been accustomed to making such landing in co-operation with the master, there is always danger when the tide is running at its full strength in the Kills.

The master was also guilty of negligence in going astern on his engines without notice to Mathisen and before Mathisen could make his line fast.

The going astern of the lighter put a great strain on the line, as the purpose was to bring the bow in alongside of the dock, and Mathison was unable with one turn around the cleat to hold the line.

The injury was occasioned solely by the negligence of the master, for which the petitioner was solely at fault, and the claimant Mathisen was not guilty of contributory negligence.

The claimant Mathisen was single and 28 years old on July 29, 1929, and his expectancy of life according to the American Experience Table of Mortality is 36.73 years.

His salary when injured was $80 a month and board, and when employed in an apartment house it was $70 a month and room.

He worked as a waiter one summer, under a contract for three months, for $250 for the season, and received in addition about $7 per week in gratuities, but quit before the three months expired.

The left leg of the claimant Mathisen is amputated about half way below the knee, and that injury of course is permanent, but the claimant is wearing an artificial limb, and when I saw him on several occasions during the trial he walked quite well.

Each side presented a medical expert, and both agree that the amputation is a very good result surgically.

I accept the view of the witness for the petitioner, that with a proper fitting of the leg, and as time rolls on, the neuralgic condition will continue to improve, and that the claimant is able to do work which does not put too much weight on the left leg, and will be able to work, although he will not be able to work as a deck hand on a boat or to engage in heavy lifting.

I am not convinced that a further amputation is required.

Of course he has endured pain and suffering and will be handicapped and lame by the loss of his foot and portion of his leg, and will of necessity be compelled to seek employment of a different kind, for all of which he is entitled to receive, and has established, his claim in these proceedings in the sum of $11,000.

A decree may be entered in favor of the petitioner for limitation of liability, and in favor of the claimant Mathisen on his claim for $11,000.